IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALLAN SEAGER,

    Petitioner,

vs.                                           No. 15-cv-0747 MCA/SMV

JEFF WRIGLEY and the ATTORNEY GENERAL
FOR THE STATE OF NEW MEXICO,

    Respondents.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Allan Seager's ("Petitioner") Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody ("Petition"), filed August 24, 2015. [Doc. 1]. Respondents answered on November 3, 2015. [Doc. 12]. The Honorable M. Christina Armijo, Chief United States District Judge, referred this matter to me for analysis and recommendation of an ultimate disposition. [Doc. 18]. Having considered the parties' submissions, the record, the relevant law, and being otherwise fully advised in the premises, I respectfully recommend that the Petition under § 2254 [Doc. 1] be **DENIED**, and that Petitioner's action be **DISMISSED with prejudice.** I further recommend that Petitioner's Motion to Compel, [Doc. 11], Motion for Discovery, [Doc. 15] and requests to expedite rulings on those motions, [Docs. 16, 17] be **DENIED as moot.**

## BACKGROUND

A 52-count criminal information was filed against Petitioner on February 16, 2010. [Doc. 12-1] at 13. The charges stemmed from Petitioner's sexual abuse of his then

three-year-old niece and covered incidents that occurred on April 3, April 30, and December 9, 2009. *Id*.

Petitioner's home was searched by law enforcement pursuant to a warrant on December 24, 2009. [Doc. 12-1] at 41. Several pieces of evidence were recovered, including at least one hard drive—the "SanDisk." *Id*. A few days after the search, Petitioner's girlfriend found a second hard drive—the "Seagate"—and gave it to Donald Seager, Petitioner's brother. He, along with two others, viewed some of the contents of the Seagate before turning it over to law enforcement. CD Recording of Motion Hearing, Mar. 15, 2011, at 9:18–9:21.

A second warrant, issued on December 28, 2009, allowed law enforcement to search (i.e., access), among other things, the contents of the SanDisk. *Id.*; [Doc. 12-1] at 42. The officer who prepared the December 28 warrant application mistakenly omitted the Seagate from the list of items to be searched. CD Recording of Motion Hearing, Jan. 4, 2011, at 3:10. Petitioner's trial counsel filed a motion to suppress the Seagate's contents based on this omission. [Doc. 12-1] at 41.

The trial judge conditionally granted Petitioner's motion to suppress, explicitly reserving the right to admit into evidence "portions of the [Seagate] viewed by parties not affiliated with law enforcement officials" after an in-limine hearing on the "Private Search Doctrine." *Id*. at 48. The court held a hearing on the Seagate's admissibility on March 15, 2011. Donald Seager testified about which portions of the Seagate's contents he had seen before giving the device to law enforcement. CD Recording of Motion Hearing, Mar. 15, 2011, at 9:17–9:20. He testified that the items he viewed on the Seagate pertained only to the April 3 incident. *Id*. The court ruled that only those portions of the hard drive that Donald Seager had viewed, i.e., items solely

related to the April 3 incident, would be admissible, but that the remainder of the Seagate's contents, including any evidence of the April 30 incident, would not. *Id*. at 9:23:40. Significantly, the items that Donald Seager viewed on the Seagate were copies of items on the SanDisk. *Id*. at 9:21:52. Thus, as a practical matter, the admissible evidence on the Seagate provided nothing beyond the admissible evidence on the SanDisk.

After the court's oral ruling excluding the evidence of the April 30 incident found on the Seagate, the prosecutor announced that an amended four-count criminal information would be filed. CD Recording of Pretrial Conference/Motions Hearing, June 7, 2011, at 1:38–1:48. The four remaining counts—the counts on which Petitioner eventually went to trial—were based only on the April 3 and December 9 incidents. [Doc. 12-1] at 49–50. Petitioner was not tried on any of the charges from the original information relating to the April 30 incident.

A jury convicted Petitioner of two counts of Criminal Sexual Penetration in the First Degree (Child under 13) on June 21, 2011. [Doc. 12-1] at 1. The Honorable Matthew G. Reynolds, District Judge for the Seventh Judicial District of New Mexico, sentenced him to 18 years' imprisonment, running consecutively, on each count. *Id*. at 2.

The New Mexico Court of Appeals reversed Petitioner's conviction for one count of Criminal Sexual Penetration in the First Degree on June 25, 2013, based on an error in the jury instructions given at trial. [Doc. 12-3] at 58. The State of New Mexico filed a petition for a writ of certiorari to the Supreme Court of New Mexico on July 25, 2013. [Doc 12-4] at 1. The Supreme Court denied the State's petition on October 17, 2013. *Id*. at 27.

Petitioner filed a petition for a writ of habeas corpus in the Seventh Judicial District of New Mexico on October 10, 2013. *Id*. at 29. The trial judge summarily dismissed the petition

on February 2, 2014. [Doc. 12-5] at 1. The Supreme Court subsequently denied his petition on April 6, 2015. [Doc. 12-6] at 23.

Petitioner filed his Petition with this Court on August 24, 2015. [Doc. 1]. Respondents filed their Answer on November 3, 2015. [Doc. 12]. They expressly waive any challenge to exhaustion. *Id*. at 4–5.

## **STANDARD FOR § 2254 HABEAS PETITIONS**

The provisions of 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 ("AEDPA"), govern this case. A petition for habeas corpus under § 2254 attacks the constitutionality of a state prisoner's conviction and continued detention. A federal court cannot grant habeas relief pursuant to § 2254(d) with respect to any claim adjudicated on the merits by a state court unless the petitioner's state court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d). "Even if a state court resolves a claim in a summary fashion with little or no reasoning, [federal courts] owe deference to the state court's result." *Paine v. Massie*, 339 F.3d 1194, 1198 (10th Cir. 2003). This standard is "highly deferential" to state courts, and the Supreme Court has noted that it is "difficult to meet," as it requires federal courts to give state court decisions the benefit of the doubt. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (citing *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)); *see also Black v. Workman*, 682 F.3d 880, 891 (10th Cir. 2012) ("Under [AEDPA,] a federal court in a § 2254 proceeding must be exquisitely deferential to the state

court's resolution of the [petitioner's] claims.").

The term "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  A state court decision is "contrary to" Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [those] cases." *Id*. at 405.  The Supreme Court has interpreted the term "contrary to" as meaning, *inter alia*, "diametrically different" and "opposite in character and nature." *Id*. Therefore, habeas relief under § 2254 may be granted only where the state court "applies a rule that contradicts the governing law set forth in Supreme Court cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Id*. at 405–06.  Significantly, it is unnecessary for the state court to cite applicable Supreme Court cases or even to be aware of such cases, "so long as neither the reasoning nor the result of the state-court decision contradicts [that precedent]." *Early v. Packer*, 537 U.S. 3, 8 (2002).

A state court decision makes an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  However, "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court . . . applied clearly established federal law erroneously or incorrectly." *Lockyer v. Andrade*, 538 U.S. 63, 75–6 (2003) (internal quotation marks and citations omitted).  "Rather, that application must be objectively unreasonable." *Id.* at 76.

5

Pursuant to AEDPA, state court findings of fact are "presumed to be correct." § 2254(e)(1). Accordingly, a petitioner challenging a state court decision based on an unreasonable determination of the facts in light of the evidence presented, *see* § 2254(d)(2), must show by clear and convincing evidence that the determination was factually erroneous. *See Miller-El v. Dretke*, 545 U.S. 231, 240 (2005); *Wiggins v. Smith*, 539 U.S. 510, 528 (2003).

Lastly, where a state court has adjudicated a claim on its merits, federal courts are limited to reviewing the record as it stood before the state court. *Pinholster*, 131 S. Ct. at 1398 (citing § 2254(d)(1)). That is, evidentiary hearings are not permitted in federal court on claims that the state court decided on their merits. *Id.* at 1398–99; *Littlejohn v. Trammell*, 704 F.3d 817, 857 (10th Cir. 2013). "'Adjudicated on the merits' [means] a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Wilson v. Workman*, 577 F.3d 1284, 1308 (10th Cir. 2009) (internal quotation marks omitted). Thus, summary decisions, even those completely devoid of any reasoning at all, can constitute decisions "on the merits" for purposes of AEDPA. *Harrington*, 131 S. Ct. at 784.

## ANALYSIS

Petitioner raises three claims in his Petition. First, he alleges that an "External Computer Hard Drive" was improperly admitted against him at trial. [Doc 1] at 5. Second, he alleges that his trial counsel was ineffective for failing to move for dismissal after certain evidence was suppressed, for failing to object to the use of the suppressed evidence at trial, and for failing to object because the amended criminal complaint referred to the original complaint. *Id.* at 7.

Third, Petitioner alleges that the trial judge improperly ordered him to wear leg shackles in front of the jury. *Id*. at 8.

### A. **INTRODUCTION OF EVIDENCE FROM THE HARD DRIVES**

#### I. Petitioner misunderstands the trial judge's pretrial ruling on the admissibility of evidence recovered from the hard drives.

Petitioner alleges that evidence from an "External Computer Hard Drive" was improperly admitted against him at trial. [Doc. 1] at 5. The nature of this allegation suggests that Petitioner did not understand the trial judge's ruling at the March 15, 2011 hearing on his motion to suppress the Seagate. The trial judge clearly held that he would allow into evidence only those portions of the Seagate reviewed by Donald Seager and others before the hard drive was turned over to law enforcement. CD Recording of Motion Hearing, Mar. 15, 2011, at 9:23. It was also clear that another device—the SanDisk, which contained the same evidence of the April 3 incident as the Seagate—would be admissible against Petitioner at trial. *Id*.

Petitioner's confusion about the admissibility of the Seagate's contents was clear at the June 7, 2011 pretrial conference and motions hearing. At that proceeding, Petitioner expressed his belief that the April 3 charges had been "dismissed" because the evidence of that incident came from the Seagate. The trial judge corrected this mistaken belief in no uncertain terms, stating that he had not dismissed any charges, but had only suppressed certain evidence from the Seagate. He also explained to Petitioner that the prosecution had two different hard drives (the Seagate and the SanDisk) that contained the same content. CD Recording of Pre-Trial Conference/Motion Hearing, June 7, 2011, at 1:42. Petitioner was on notice before his trial

7

began that all of the evidence from the SanDisk hard drive and *some* of the evidence from the Seagate would be admissible against him at trial. *See id*. at 1:48.[1]

Petitioner also claims that the amended criminal information refers to the original criminal information, which in turn refers to the "suppressed External Hard Drive." [Doc. 1] at 5. To the extent Petitioner offers this as support for his argument that suppressed evidence was used against him, it is unhelpful. As discussed above, the trial judge suppressed only a portion of the Seagate's contents and none of the SanDisk's contents. Petitioner has simply failed to grasp the trial judge's ruling on the admissibility of the two hard drives. His contention that "suppressed" evidence was used against him is meritless.

## II.     **Petitioner has failed to show that he was prejudiced by the use of evidence from the Seagate.**

In order to obtain habeas relief, a petitioner must demonstrate that he suffered some prejudice based on the alleged error in the state court proceeding. *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). In determining whether a petitioner for habeas relief has suffered prejudice, courts look to whether the trial error "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Id*.

Even if the trial judge had excluded the Seagate entirely, the contents of the SanDisk would still have been admissible against Petitioner. The attorneys agreed before trial that both hard drives contained the same evidence of the April 3 incident. CD Recording of Motion Hearing, Mar. 15, 2011, at 9:21:52. Donald Seager testified that the video he and the others saw

---

[1] Admittedly, the trial judge's statement that "one disk is out, the other disk is in" at the June 7, 2011 pretrial conference and motions hearing could have been clearer. *Id*. at 1:48. His ruling at the March 15, 2011 hearing on the motion to suppress, however, was very clear. At the March hearing, he ruled that the portions of the Seagate that Donald Seager and others had not viewed before turning it over to law enforcement were "out," not that the Seagate was "out" entirely. CD Recording of Motion Hearing, Mar. 15, 2011, at 9:23.

8

on the Seagate before turning it over to law enforcement was the same video that had already been found on the SanDisk. *Id*. at 9:20:25. Had the trial judge excluded the Seagate entirely, the SanDisk still would have been admissible against Petitioner. The contents of the two hard drives were duplicative of one another as to evidence of the April 3 incident. Thus, even if admitting a limited portion of the Seagate's contents had been error, which it was not, Petitioner would still fail to show that he was prejudiced by the use of the contents of the Seagate.

### B. INEFFECTIVE ASSISTANCE OF COUNSEL

#### I. Petitioner alleges that his trial counsel rendered ineffective assistance with regard to the evidence from the hard drives.

Petitioner's claim of ineffective assistance of counsel stems directly from his misunderstanding of the admissibility of the hard drives. Petitioner alleges that his trial counsel was ineffective in three ways: (1) she did not file a motion to dismiss when the suppression of the evidence "suppressed all the charges against [him];" (2) she did not object to the use of the suppressed evidence at trial; and (3) she did not prevent the jury from learning about the suppressed evidence and dropped counts from the original criminal information. [Doc. 1] at 7.

#### II. Standard for Ineffective Assistance of Counsel

The test for making a claim of constitutionally ineffective assistance of counsel was set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must satisfy a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial.

*Strickland*, 466. at 687. Both showings must be made to satisfy the *Strickland* standard. *Id.* The Court need not address both prongs of the standard if the defendant makes an insufficient showing on one of the prongs. *Id.* at 697. In applying the two-part *Strickland* test, a court may address the performance and prejudice components in any order. *Boltz v. Mullin*, 415 F.3d 1215, 1222 (10th Cir. 2005)

Counsel's performance will not be deemed deficient for failing to raise meritless issues. *United States v. Simpson-El*, 423 F. App'x 803, 806 (10th Cir. 2011) (unpublished) ("Counsel is not ineffective in failing to raise spurious issues."); *Sperry v. McKune,* 445 F.3d 1268, 1275 (10th Cir. 2006) (counsel not ineffective for failing to raise meritless issue).

### III.   Petitioner has failed to show that his trial counsel was ineffective.

Petitioner alleged ineffective assistance of counsel in his state habeas petition, claiming that his counsel was ineffective for failing to object to the use of suppressed evidence at trial. [Doc. 12-4] at 35. His petition was summarily dismissed in its entirety. [Doc. 12-5] at 1. The Supreme Court of New Mexico subsequently denied his petition.[2] [Doc. 12-6] at 24. Federal courts owe deference to a state court's determination of a prisoner's claim. *Paine*, 339 F.3d at 1198. This is true even when the state court resolves a claim in a summary fashion, *id.*, as long as the resolution was "on the merits," *Harrington*, 131 S. Ct. at 786. Deference is not owed only when a state court's decision on the merits is contrary to clearly established federal law or is based on a clearly unreasonable determination of the facts in light of the evidence presented. § 2254 (d).

---

[2] While initially held in abeyance, [Doc. 12-6] at 7, Petitioner's state habeas petition was denied by the Supreme Court of New Mexico after the district court entered an amended judgment and sentence reflecting the reversal of conviction of one of Petitioner's counts, *id*. at 23.

The state court's rejection of Petitioner's claim of ineffective assistance of counsel is entitled to deference. At the hearing on Petitioner's motion to suppress the Seagate, the trial court ruled that only portions of the hard drive would be admissible at trial. CD Recording of Motion Hearing, Mar. 15, 2011, at 9:23. The court later explicitly stated that all of the contents of the SanDisk would be admissible against Petitioner. CD Recording of Pre-Trial Conference/Motion Hearing, June 15, 2011, at 1:42. Counsel's failure to object to the hard drive evidence at trial was not ineffective assistance. The court had already ruled on that evidence. Moreover, even a successful objection to the Seagate would not have helped Petitioner, because the evidence on the Seagate was duplicative of what was on the SanDisk.

Petitioner also contends that the jury was made aware of the suppressed evidence because the amended criminal information referred back to the original information, which contained references to suppressed evidence. [Doc. 1] at 8. This assertion stems from Petitioner's mistaken belief that all of the hard drive evidence was suppressed. The original criminal information does refer to images from an "external hard drive," but not all of the hard drive evidence was suppressed. Only a portion of one of the hard drives was suppressed. Additionally, the original information does not distinguish between the two hard drives. It instead refers generically to "external hard drive images" without revealing the source of those images. [Doc. 12-1] at 13–40. Petitioner has not shown that merely seeing the words "external hard drive image" would reveal to the jury that there was additional evidence they had not seen. Finally, and most importantly, Petitioner has not shown that the jury ever saw the original criminal information. Petitioner fails to show that his counsel was ineffective with regard to the

introduction of evidence at trial or the reference to the original information in the amended information.

### C. USE OF LEG SHACKLES AT TRIAL

**I. Petitioner alleges that his legs were shackled at trial.**

Petitioner alleges that the trial judge ordered him to wear shackles in front of the jury without providing a reason. [Doc. 1] at 8. He states that the jury could see the shackles "plainly," and that the jurors "pointed and laughed while discussing the shackles." *Id.*

**II. Petitioner has failed to show that the use of leg shackles at his trial violated his constitutional rights.**

Federal courts owe deference to a state court's determination of a prisoner's claim. *Paine*, 339 F.3d at 1198. This is true even when the state court resolves a claim in a summary fashion, *id.*, as long as the resolution was "on the merits," *Harrington*, 131 S. Ct. at 786. However, deference is not owed when a state court's decision on the merits is contrary to clearly established federal law or is based on a clearly unreasonable determination of the facts in light of the evidence presented. § 2254 (d).

Petitioner's request for relief based on his shackling at trial was denied by the Court of Appeals of the State of New Mexico on direct appeal. [Doc. 12-3] at 69. The opinion noted that "[Petitioner] points to nowhere in the audio record [of his trial] where any noise is detectable," and that Petitioner did not respond to the State's argument that the trial court "actively guarded against having the jury hear or see" the shackles. *Id.* The opinion also noted that the trial judge took steps to try to keep Petitioner's shackles out of the view of the jury by excusing them from the courtroom while the Petitioner took and left the witness stand. *Id.* Petitioner raised the issue of shackling again in his state habeas petition, [Doc. 12-4 at 38], which was summarily dismissed

by the Seventh Judicial District of New Mexico, [Doc. 12-5] at 1, and later denied by the Supreme Court of New Mexico, [Doc. 12-6] at 23.

Petitioner has not alleged—much less shown—that the New Mexico Court of Appeals' opinion or the denial of Petitioner's state habeas petition was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254 (d)(1). While there is a presumption that a defendant should not be restrained during his or her trial to avoid the appearance of predetermined guilt, the "right to appear before the jury unfettered from physical restraints is not unqualified." *U.S. v. Hack*, 782 F.2d 862, 867 (10th Cir. 1986). Further, Petitioner has not alleged—much less shown—that the shackling violated his rights. He does not even allege that he was wrongly shackled, but instead only states that "[t]he Judge ordered me to wear shackles before the Jury" without providing a reason. [Doc. 1] at 8. Petitioner is certainly not entitled to relief on the basis of this bare assertion.

### III. <u>Petitioner has failed to show that his shackling at trial prejudiced him.</u>

In order to obtain habeas relief, a petitioner must demonstrate that he suffered some prejudice based on the alleged error in the state court proceeding. *Brecht*, 507 U.S. at 638. In determining whether a petitioner for habeas relief has suffered prejudice, courts look to whether the trial error "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Id*. With regard to shackling, by itself, "a juror's brief view of a defendant in shackles does not qualify as a due process violation worthy of a new trial." *U.S. v. Jones*, 468 F.3d 704, 709 (10th Cir. 2006). Rather, the petitioner must show that the incident resulted in prejudice to him. Here, Petitioner alleges only that the jury could see his shackles and that they pointed and

laughed at him. [Doc. 1] at 8. He has failed to allege—much less show—that the leg restraints influenced the jury's verdict in any way.

### D. PETITIONER'S REQUEST FOR TRANSCRIPTS AND OTHER RECORDS

Petitioner has filed a Motion to Compel [Doc. 11] and a Motion for Discovery [Doc. 15]. He requests that the Court order the warden and "GEO Group, [I]nc." to allow him access to a computer to listen to recordings of his trial. [Doc. 11] at 1. He also requests all files and records from his state criminal trial. [Doc. 15] at 1. He has requested expedited rulings on both of these motions. [Docs. 16, 17].

Before the Court will order transcripts or recordings, a habeas corpus petitioner must allege more than conclusory allegations and must demonstrate a particularized need for the transcripts or recordings. *See, e.g., Jackson v. Turner*, 442 F.2d 1303, 1305 (10th Cir. 1971) (stating that "the rule in this circuit with respect to federal habeas corpus proceedings is that petitioners who seek a transcript . . . must do more than allege conclusory allegations") (citations omitted); *see also Ruark v. Gunter*, 958 F.2d 318, 319 (10th Cir. 1992) (holding that, while "[o]n direct appeal, a trial transcript is an absolute matter of right for an indigent criminal defendant . . . . a § 225[4] petitioner seeking collateral relief must demonstrate that his claim is not frivolous before the court is required to provide him with a free transcript;" therefore, the court was not required to provide a transcript to a petitioner in a § 2254 habeas case when the petitioner had made mere conclusory allegations because the court is not required to provide petitioners access to transcripts to search for facts to support their allegations).

Petitioner's conclusory statements that the additional materials will provide support for his claims do not show a particularized need for additional state court materials, and the Court

will not order the relief he requests. *See Ruark*, 958 F.2d at 319.  The Court finds no merit in Petitioner's request that the Court order the Defendant (the warden of the prison where Petitioner is incarcerated) and GEO Group, Inc., a non-party, to provide him with access to a computer to listen to the recordings of his trial.

Petitioner states that the requested relief would allow him to "substantiate [his] arguments." [Doc. 15] at 1.  However, the Court has reviewed the relevant portions of the recording of Petitioner's trial and pretrial proceedings and has found no evidence to support his claims.  In fact, the recordings demonstrate that Petitioner's claims are without merit and based on his misunderstanding of a pretrial ruling.  Besides, Petitioner does not allege that he requested access to a computer, or that he followed the proper procedures for such a request under the prison's policies, or even that his request was denied.  He does not allege an inability to obtain the records of his trial on his own.  Thus, I respectfully recommend that Petitioner's Motion to Compel [Doc. 11], Motion for Discovery [Doc. 15], and requests for expedited rulings on those motions [Docs. 16, 17] be denied.

## CONCLUSIONS AND RECOMMENDED DISPOSITION

For the reasons set forth herein, I respectfully recommend that the Petition under § 2254 [Doc. 1] be **DENIED**, and that Petitioner's action be **DISMISSED with prejudice**. I further recommend that Petitioner's Motion to Compel, [Doc. 11], Motion for Discovery, [Doc. 15] and requests to expedite rulings on those motions, [Docs. 16, 17] be **DENIED as moot.**

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**